## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-313

**AGILUS HEALTH, INC. (KENNETH MCKEITHEN)**

**VERSUS**

**DRESSER, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DIST 02
PARISH OF RAPIDES, NO. 07-08504
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED**.

**Gremillion, Judge, concurs in part, dissents in part, and assigns written reasons.**

**Eric J. Waltner**
**D. Paul Gardner, Jr.**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**Counsel for Defendants/Appellants:**
       **Liberty Mutual Insurance Company and Dresser, Inc.**

**Edward Emile Roberts**
**Neblett, Beard & Arsenault**
**P. O. Box 1190**
**Alexandria, LA 71309**
**(318) 487-9874**

**Counsel for Plaintiff/Appellee:**
     **Agilus Health, Inc.**

**Edward R. Wicker, Jr.**
**Barrasso, Usdin, Kupperman**
**909 Poydras St., #1800**
**New Orleans, LA 70112**
**(504) 589-9700**
**Counsel for Defendants/Appellants:**
     **Liberty Mutual Insurance Company and Dresser, Inc.**

**Richard Bray Williams**
**Williams Family Law Firm, L.L.C**
**P. O. Box 15**
**Natchitoches, LA 71458-0015**
**(318) 352-6695**
**Counsel for Plaintiff/Appellee:**
     **Agilus Health, Inc.**

PETERS, J.

Dresser, Inc. and its workers' compensation insurer, Liberty Mutual Insurance Company (collectively referred to as Dresser), appeal a judgment rendered by the workers' compensation judge (WCJ) in favor of Agilus Health, Inc. (Agilus), awarding Agilus recovery of $23.40 for medical services rendered to one of Dresser's injured employees, $2,000.00 in statutory penalties, and $3,000.00 in attorney fees. We reverse the WCJ award of statutory penalties, but affirm the judgment in all other respects. Additionally, we render judgment in favor of Agilus and against Dresser in the amount of $1,500.00 as an additional attorney fee for work performed on appeal.

## DISCUSSION OF THE RECORD

This appeal is one of three cases now before this panel involving the same litigants and raising the same legal issue. In each case, an employee of Dresser sustained an injury compensable under the Louisiana Workers' Compensation Act and received medical treatment from Agilus. In each case, Dresser, through Liberty Mutual, initially applied La.R.S. 23:1034.2 and La.Admin.Code tit. 40, part I, § 5157 to reduce Dresser's medical charges pursuant to the workers' compensation fee schedule. However, Dresser further reduced the charges by an additional twenty percent before tendering payment to Agilus. The correctness of the twenty percent reduction is the single issue in all three cases.

All of the disputes now before us have the same undisputed factual background and arise from a series of contracts involving a preferred provider organization (PPO) which discounts its payments to Agilus by twenty percent. They begin with a 2004 contract between Agilus' predecessor, Louisiana Physical Therapy Centers (LPTC), and First Health Group Corporation (First Health), which had as its purpose LPTC's participation in a Preferred Provider Panel through which First Health would offer

discounted medical services to participating payors.

Section 2 of Article 4 of the LPTC contract addressed provider billing and payment and provided, in pertinent part, "For Workers' Compensation Payors, reimbursement under this Agreement shall not exceed the amount allowed for Provider's services under Workers' Compensation laws and regulations. " Section D of Appendix A, entitled "FIRST HEALTH OUTPATIENT CARE NETWORK REIMBURSEMENT," and attached to the contract, provided:

> Reimbursement from Workers' Compensation Payors for services rendered to occupationally ill/injured employees shall be as follows:
>
> (1)　If any state law or regulation establishes rules or guidelines for the payment of health care services, reimbursement shall not exceed 85% of the maximum amount payable under such rules or guidelines.　Any procedure code which is unvalued shall be reimbursed pursuant to Section A, Paragraph (3), of this Appendix.　This rate of reimbursement shall apply whether such rules or guidelines are in existence at the time of execution of this agreement or established at a later time.
>
> (2)　In the absence of any state law or regulation set forth in Section D, Paragraph (1), reimbursement shall be the method set forth in Section A, Paragraph (1), (2) and (3) of this Appendix, but in no event shall reimbursement exceed the usual and customary charge for the services, as determined by First Health or Payor.

In 2005, Section D of Appendix A was amended to provide that reimbursement from workers' compensation payors shall not exceed "80% of the maximum amount payable under such rules or guidelines."

In 2006, Liberty Mutual also entered into a contract with First Health.  This gave Liberty Mutual and its workers' compensation insureds access to First Health's medical provider network and its "reduced and negotiated fees for health care services."  In other words, there was no direct contract between Agilus and Dresser. Rather, the basis of this and the other two suits is Dresser's underpayment of medical

2

services that Agilus provided to its employees based on contracts emanating from First Health.

In the matter now before us, Dresser's injured worker is Kenneth McKeithen, and it is not disputed that Mr. McKeithen sustained an injury compensable under the Louisiana Workers' Compensation Act, that Agilus provided medical care to Mr. McKeithen totaling $2,588.00 and that the medical care was for the treatment of his compensable injuries. In handling Agilus' claim for payment, Dresser reduced the medical care statement submitted by Agilus and tendered $3,013.40 to Agilus as payment in full for the services rendered to Mr. Atwood. The WCJ determined that $23.40 represented the additional twenty percent reduction provided for by First Health's contract with Agilus.[1]

Agilus brought this claim to recover the twenty-percent underpayment from Dresser. Following a trial on the merits, the WCJ ultimately rendered judgment in this case, as well as the other two now before us, awarding Agilus judgment for the twenty percent at issue, penalties, and attorney fees. In doing so, the WCJ concluded that Dresser could not rely on contracts with a PPO to reduce the amounts paid for medical services provided by Agilus by to its injured employee. This appeal followed.

In their appeal of this and the other two cases before us, Dresser raised three assignments of error:

1.    The Hearing Officer erred by invalidating Agilus Health's contract with First Health, and Liberty Mutual's contract with First Health and concluding that such contracts cannot be utilized to discount a health care provider's fees below the reimbursement fee schedule for medical

---

[1]The judgment rendered by the WCJ recognizes the underpayment to be $23.40. However, in its brief to this court, Agilus asserts that the underpayment was $420.40. Agilus did not appeal the amount at issue nor did it answer the appeal to raise this issue.

3

treatment rendered in connection with a workers' compensation claim.

2.     The Hearing Officer erred in finding that Liberty Mutual and Dresser were arbitrary and capricious in light of their reliance on the PPO contracts and other favorable and well-reasoned Louisiana court opinions.

3.     The Hearing Officer improperly held Liberty Mutual and Dresser liable pursuant to Louisiana Revised Statute 23:1201, and improperly assessed penalties and attorney's fees against them.

Agilus answered the appeal requesting an award of additional attorney fees for work performed on appeal.

**OPINION**

Dresser's first assignment of error can be rephrased to ask: Can an employer reimburse a health care provider at an amount below that provided by the Louisiana Workers' Compensation Act's reimbursement schedule. In a concurring opinion rendered in *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942, p. 4 (La.App. 3 Cir. 5/31/06), 931 So.2d 553, 561(first alteration ours), the writer of this opinion, joined by five of the twelve judges on this court, recognized that the answer to this question is "no":

> As they did in *Beutler England Clinic* [*v. Market Basket No. 27*, 05-952 (La.App. 3 Cir. 12/30/05)], 919 So.2d 816, the defendants have attempted to interpose the preferred provider organization (PPO) contract as a defense to full payment, asserting that the attendant issues remove the dispute from the jurisdiction of the OWCA. In doing so, the employer and its insurer ignore the clear language of La.R.S. 23:1033, which provides that "[n]o contract, rule, regulation or device whatsoever shall operate to relieve the *employer*, in whole or in part, from any liability created by this Chapter except as herein provided." (Emphasis added.) As stated in my dissent in *Beutler England Clinic*, 919 So.2d at 821,
>
>> [T]o the extent that the PPO contract purports to further limit the employer's liability for medical care, it runs afoul of La.R.S. 23:1033 and may not serve as a basis to reduce the amount owed to Beutler England for the treatment of [the injured employee]. Because the PPO contract may not

4

> serve as a basis to reduce the amount owed for the treatment of [the injured employee], Beutler England's claim is properly before the OWC pursuant to La.R.S. 23:1034.2(F)(1) as a garden-variety medical expense claim. Whatever remaining rights the defendants have vis-à-vis the PPO, in light of the Workers' Compensation Act's express disallowal of contracts in contravention of its provisions, is another issue for another forum.

This same issue has recently been addressed in *Central Louisiana Ambulatory Surgical Center, Inc. v. Payless Shoesource, Inc.*, 10-86, 10-91, 10-92, 10-96, 10-97, 10-99, 10-100, 10-115, 10-117, 10-118 (La.App. 3 Cir. 7/28/10), __ So.3d __, *rehearing granted,* (La.App. 3 Cir. 10/20/10), ___ So.3d ___, and *Agilus Health v. Accor Lodging North America*, 09-1049 (La.App. 3 Cir. 3/10/10), 32 So.3d 1120, *writ granted*, 10-800 (La. 6/18/10), 38 So.3d 312. We agree with the holdings in those opinions and incorporate the analysis in both as though set out herein in full. That being the case, we find no merit in Dresser's first assignment of error.

With regard to the penalty and attorney fee issues, the panel in *Central Louisiana Ambulatory Surgical Center, Inc.* reversed the WCJ awards while the panel in *Agilus Health* affirmed the WCJ awards and awarded additional attorney fees for the work performed on appeal. The panel in *Central Louisiana Ambulatory Surgical Center, Inc.* initially concluded that the defendant School Board had reasonably controverted the claim. However, on rehearing, the panel reversed its position on the penalty and attorney fee award based on the failure of the defendants to comply with the notice requirements of La.R.S. 40:2203.1. With regard to the penalty issue, the plaintiff in the matter before us did not properly raise the notice issue and, therefore, we agree with and choose to follow the holding in the original opinion of *Central Louisiana Ambulatory Surgical Center, Inc.* However, with regard to the attorney fee issue, we agree that the attorney fee award should be affirmed, but for different

reasons from those expressed in either *Central Louisiana Ambulatory Surgical Center, Inc.* or *Agilus Health*. We conclude that the WCJ may impose an award of attorney fees as an item of recovery separate from the penalty issue.

In reaching the conclusion that the attorney fee award should be upheld, we first note that the time and place of payment of workers' compensation benefits, as well as medical expenses, is governed by La.R.S. 23:1201(A) through (E). The penalties for failure to make timely payments of compensation and/or medical expenses to an employee are set forth in the initial paragraph of La.R.S. 23:1201(F), and the conditions under which those penalties may be recovered are set forth in La.R.S. 23:1201(F)(1)-(3). Louisiana Revised Statutes 23:1201(F)(1)-(3) reads as follows:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 *shall* result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties *shall* be assessed in the following manner:
>
> (1) Such penalty and attorney fees *shall* be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
>
> (2) This Subsection *shall not apply if the claim is reasonably*

6

*controverted* or if such nonpayment results from conditions over which the employer or insurer had no control.

>    (3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section *shall be paid directly to the employee.*

(Emphasis added.)

The matter now before us, however, is not a dispute between the employer/insurer and employee, but one between an employer/insurer and a health care provider. The right to penalties and attorney fees in such a dispute is governed by La.R.S. 23:1201(F)(4), which reads as follows:

>    (4) In the event that the health care provider prevails on a claim for payment of his fee*, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider.* This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

(Emphasis added.)

The initial paragraph of La.R.S. 23:1201(F) provides that the mandatory penalty available to a claimant is comprised of two parts: (1) a percentage of the unpaid compensation subject to a maximum amount, *and* (2) a reasonable attorney fee. With regard to a health care provider's claim, an award of anything **over** the amount owed is subject to the WCJ's discretion, although that discretion is limited to some extent by the "reasonably controverted" requirement of La.R.S. 23:1201(F)(2).

In the matter before us, the WCJ awarded the $2,000.00 statutory penalty provided in the general language of La.R.S. 23:1201(F), as allowed in La.R.S. 23:1201(F)(4), and awarded a $3,000.00 attorney fee "for the work done" by Agilus' attorneys. That is to say, the attorney fee award was awarded, not as a penalty as

7

provided for in the general language of La.R.S. 23:1201(F), but for the actual work performed as allowed under La.R.S. 23:1201(F)(4).   While the WCJ's discretion to award the twelve percent penalty under La.R.S. 23:1201(F)(4) is still subject to the "reasonably controverted" requirement of La.R.S. 23:1201(F)(2), the attorney fee award is not.

Because Dresser does not argue in its assignments of error or in brief that the $3,000.00 award does not represent a reasonable fee for the hours worked by Agilus' attorneys, we will not review that award in that regard.   Dresser does, however, address the attorney fee in the context of the amount of the fee awarded when compared to the base amount of the underpayment.  Without citing this court to any statutory or jurisprudential authority, Dresser asserts that an award so disproportionate to the amount at issue is a violation of substantive due process.  In making this argument, Dresser ignores the fact that both sides to an issue are given basic due process rights:

> All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

La.Const. art. 1, § 22.

In response to this constitutional requirement, the legislature effects remedies whereby all persons, rich or poor, having a claim in controversy, small or large in monetary value, have access to the courts.  In this case, the legislature did just that—it effected an award of attorney fees, based on work performed, for health care providers.

Here, the legislature effected a statutory scheme similar to that of an open account collection action.  Its obvious intent is to give those with small claims equal

8

access to the courts as those with substantial monetary claims. Thus, we find no error in the WCJ's award of attorney fees to Agilus.[2]

**Agilus' Answer to Appeal**

In its answer to Dresser's appeal, Agilus sought only an increase in the attorney fee award for work performed on appeal.[3] Based on our conclusion on the merits as set forth above, we find that Agilus is entitled to an additional attorney fee award of $1,500.00 for work performed on appeal. We award this amount based on the **same** mandate of La.R.S. 23:1201(F)(4) as did the WCJ, that the attorney fee be reasonably "based upon actual hours worked." Given that the issue is basically the same in all three cases now before us, we find this amount reasonably appropriate.

**DISPOSITION**

For the foregoing reasons, we reverse the WCJ's $2,000.00 statutory penalty award to Agilus Health, Inc. We affirm the judgment in all other respects and award Agilus Health, Inc. an additional attorney fee of $1,500.00 for legal work performed on appeal. We assess all costs of this appeal equally between Dresser, Inc. and Liberty Mutual Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

_____

[2]Our holding affirming the WCJ's award of attorney fees does not address the amount of attorney fees awarded as this issue was not raised by Dresser and Liberty Mutual on appeal.

[3]In its brief to this court, Agilus did raise the issue of lack of notice from Dresser that its payment would be further reduced by virtue of the PPO agreement. However, the judgment is silent on this issue and the WCJ did not mention this claim in its reasons for judgment. When a judgment is silent as to a claim, there is a presumption that the trier of fact rejected that claim. *Garber v. Badon & Rainer*, 07-1497 (La.App. 3 Cir. 4/2/08), 981 So.2d 92, *writ denied*, 08-1154 (La. 9/19/08), 992 So.2d 943. Since Agilus did not appeal the rejection of this claim, we will not consider it on appeal.

9

**10-313**

**AGILUS HEALTH (KENNETH MCKEITHEN)**

**VERSUS**

**DRESSER, INC., ET AL.**

**GREMILLION, Judge, concurs in part and dissents in part.**

Because it is clear from the record that the procedures for notifying the health care provider that a PPO discount would be applied were not followed, I concur based on the rationale I expressed in my initial concurrence in *Central La. Amb. Surg. Ctr., Inc. v. Payless Shoesource, Inc.*, 10-86 (La.App. 3 Cir. 7/28/10), ___ So.3d ___.

Because I believe the appellants did raise the issue of the amount of attorney fees in their assignments of error, I dissent on the award of attorney fees and would lower them, based upon the rationale expressed in my concurrence in the *Central La. Amb. Surg. Ctr.* matter on rehearing. I also dissent on the issue of the reversal of the WCJ's award of penalties for the reasons expressed by the majority in the *Central La. Amb. Surg. Ctr.* matter on rehearing.